UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

**KEYIA LEWIS,**

       **Plaintiff,**

      **v.**                                          **Case No. 04-C-601**

**HALL IMPORTS INC.,**

       **Defendant.**
_____

**DECISION AND ORDER GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
_____

       The plaintiff, Keyia Lewis ("Lewis"), initiated this case against her previous employer, Hall Imports, Inc. ("Hall Imports") and two of her former supervisors, Steve Leger ("Leger") and James Stroh ("Stroh"). Claiming that the defendants discriminated against her based on her sex and race, Lewis sets forth four causes of action: (1) a hostile work environment claim alleging sexual and racial harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq. ("Title VII"); (2) a Title VII discrimination claim; (3) a Title VII retaliation claim; and (4) a race discrimination claim under 42 U.S.C. § 1983.

       This court previously dismissed defendants Leger and Stroh for lack of jurisdiction. (Order of Dismissal, Oct. 8, 2004.). The remaining defendant, Hall Imports has now filed a motion for summary judgment on all counts of the complaint. The pleadings on the Hall Imports' motion for summary judgment are closed, and the motion is now ready for resolution. The court will address Lewis' § 1983 claim first. To state a claim for relief under § 1983, Lewis must allege: (1) that she was

deprived of a right secured by the Constitution or laws of the United States, and (2) that the person who deprived her of that right was acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980); Racine Charter One, Inc. v. Racine Unified School Dist., 424 F.3d 677, 680 (7th Cir. 2005); Brown v. Budz, 398 F.3d 904, 908 (7th Cir. 2005). There is no allegation in the complaint from which the court can conclude that Hall Imports was acting under color of state law. Accordingly, summary judgment will be granted with respect to count four, and the remainder of the court's decision will focus on Lewis' Title VII claims.

## I. POSITIONS OF THE PARTIES

Lewis worked for Hall Imports as a car salesperson for three months, from February 6, 2002 to May 6, 2002. During that time, Lewis says that her supervisors, Leger and Stroh, made numerous sexually and racially explicit comments to her. Leger allegedly told Lewis: that "he had more than enough money to take care of her," that his "wife's at work, we can go home at lunch," and that "there's a lot of hotels out there." Leger also allegedly made various comments about Lewis' clothing and, on one occasion, told Lewis to close a car sale by leaving her shirt unbuttoned. (Compl. ¶ 15b-d.).

Stroh is also alleged to have made racial and sexual comments to Lewis. Lewis says that Stroh told her that "he wanted to have a black girl because he had never had one," asked if she "had ever been taken care of by a white man," gave Lewis his business card and his home phone number after making sexual comments, and indicated that Lewis would not have to work if she had oral sex with him. (Compl. ¶ 15e-h.).

Lewis takes the position in her complaint that these comments were discriminatory (count two) and created a hostile work environment (count one). In addition, in the retaliation claim set forth at count three of her complaint, Lewis says that she was terminated because she refused Stroh's sexual

2

advances.

Hall Imports denies that Leger and Stroh made the statements alleged in Lewis' complaint. In addition, Hall Imports contends that Lewis has not stated a viable cause of action, even if the statements were assumed to be true. As grounds, Lewis contends that the alleged statements by Leger and Stroh do not rise to the level that is deemed actionable under Title VII, that Lewis was not performing her job satisfactorily, that Lewis has not identified similarly situated employees, that the Ellerth/Faragher affirmative defense is established, and that the nondiscriminatory reasons for terminating Lewis are not rebutted. Additional facts asserted by Hall Imports in support of its position will be discussed later in the decision, where relevant.

## II. SUMMARY JUDGMENT STANDARDS

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise proper motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Material facts are those facts which, under the governing substantive law, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id.

The movant bears the burden to establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); see also Celotex Corp., 477 U.S. at 323 (the moving party has the responsibility of informing the court of portions of the record or affidavits that demonstrate the absence of a triable issue). The moving party may meet its burden to show an absence of a material issue by

demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson, 477 U.S. at 255; Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir. 1989). If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

### III. HOSTILE WORK ENVIRONMENT CLAIM

For several reasons, this court will grant the motion for summary judgment on Lewis' hostile work environment claim. As an initial matter, Lewis does not deny that the decision to terminate her employment was made by Andrew Hall ("Hall"), president of Hall Imports, and not Leger or Stroh. (Def.'s Proposed Findings of Fact ("PFOF") ¶¶ 5, 44.). This is important to Lewis' hostile work environment claim because Hall Imports asserts the affirmative defense set forth in Burlington Industries Inc. v. Ellerth, 524 U.S. 742 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775 (1998). Under Ellerth and Faragher, an employer is strictly liable for a supervisor's actions only if the supervisor's harassment causes the plaintiff to suffer an adverse employment action. Ellerth, 524 U.S. at 765; Faragher, 524 U.S. at 807. If the supervisor does not cause an adverse employment action, an employer is vicariously liable and may avoid liability by demonstrating (1) that it exercised reasonable care to prevent and promptly correct any harassing behavior, and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities provided. Id. at 764-65; Faragher, 524 U.S. at 807.

Because neither Stroh nor Leger was responsible for Lewis' termination, the Ellerth/Faragher

4

defense is available. In addition, based on the undisputed facts, Hall imports satisfied both elements of the defense. With respect to the first element, Hall Imports asserts that it utilizes a company policy that is adequate to prevent and correct harassment. The policy reads, in pertinent part, as follows:

> Harassment on the job is a violation of Title VII of the Civil Rights Act of 1964. The Hall Dealerships support the reporting by any employee of harassment on the basis of sex, race, color, age, national origin, religion, sexual orientation, or disability. Please do not assume that the Dealership is aware of your problem. It is your responsibility to bring your complaints and concerns to our attention so that we can help resolve them. If you believe that you have been the victim of harassment of any type, you are strongly encouraged to report the incident(s) to any Department Manager, General Manager, or Supervisor. **If you do not feel that you can discuss the matter with any of these, or if you are not satisfied with the way your complaint has been handled, please contact either Mr. Hall or Marti Carter.** All reports are confidential and will be completely investigated. You will not be penalized in any way for reporting such conduct.

(Def. PFOF ¶ 16, Hall Aff. Attach. at 35 (emphasis added).). This policy is set forth in the Hall Imports employee handbook, which Lewis received on February 13, 2002. (Hall Aff. Attach - Lewis receipt.).

In response to the Ellerth/Faragher defense, Lewis claims that she reported Leger's and Stroh's comments to an un-named female manager, who took no action on Lewis' behalf. (Pleas Aff. ¶ 6.). Hall Imports contends that there is no evidence to support that allegation. It is undisputed that the only female office manager during the time of Lewis' employ was Mary McGinn-Zimmerman ("McGinn-Zimmerman"). McGinn-Zimmerman denies that Lewis complained to her and states that, if a harassment complaint were made, she would have created a report and commenced an investigation. (McGinn-Zimmerman Aff. ¶¶ 4-5.). Hall Imports' records do not reflect any such report. (Hrobar Aff. ¶ 5.).

5

That factual dispute, however, is not material for purposes of summary judgment. Hall Imports' harassment policy makes clear that "[i]f you do not feel that you can discuss the matter with [a manager or supervisor], or if you are not satisfied with the way your complaint has been handled, please contact either Mr. Hall or Marti Carter." Thus, even if Lewis contacted a female manager and received no response, that initial effort did not suffice. Lewis should have taken her complaint to either Hall or Marti Carter, as the policy instructs. It is undisputed that Lewis failed to take the required action. The facts presented establish that Hall created a reasonable method by which Lewis could have complained about Leger's and Stroh's actions, but she failed to do so. Both of the Ellerth/Faragher elements are satisfied and the hostile work environment claim cannot proceed.

Furthermore, one of the elements of a prima facie case for a hostile work environment claim is that the level of the harassment suffered was severe. As it has been made very clear in this circuit and others, not all offensive workplace behavior violates the law. Smith v. Sheahan, 189 F.3d 529, 532 (7th Cir. 1999). "The harassment must be 'so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment.'" Hilt-Dyson v. City of Chicago, 282 F.3d 456, 462 (7th Cir. 2002). A "hostile work environment is one that is 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive and one that the victim in fact did perceive to be so.'" Id. at 463. A number of factors may be considered when determining whether there is an objectively determinable hostile work environment. Some of those factors include: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or humiliating or was it merely an offensive utterance; and (4) whether the harassment interferes with the employees work performance. Adusumilli v. City of Chicago, 164 F.3d 353, 361 (7th Cir. 1998); Hostetler v. Quality Dining, Inc., 218 F.3d 798, 806-07

6

(7th Cir. 2000).

The comments alleged by Lewis are not objectively severe or pervasive enough to create a hostile work environment. Three Seventh Circuit cases in which the court has recognized a hostile work environment claim are illustrative. In Smith v. Sheahan, the Seventh Circuit found a hostile work environment when a male co-worker called the female plaintiff "a 'bitch,' threatened to 'fuck her up,' pinned her against a wall, and twisted her wrist severely enough to damage her ligaments, draw blood and eventually require surgical correction." 189 F.3d 529, 531 (7th Cir. 1999). In Hostetler v. Quality Dining Inc., the Seventh Circuit reversed the decision granting summary judgment for the employer when a co-worker (1) forcibly kissed the plaintiff, (2) attempted to unfasten the plaintiff's brassiere on a separate occasion, when the plaintiff turned away and buried her face in her lap to avoid another unwelcome kiss, and (3) approached the plaintiff while she was attending to customers and told her that he could perform oral sex on her so effectively that "'[she] would do cartwheels." 218 F.3d at 798 (alterations in original). And finally, in Carr v. Allison Turbine Division, General Motors Corp., the Seventh Circuit affirmed the district court's conclusion that co-workers' conduct was actionable, where the plaintiff alleged that her co-workers:

1. made derogatory comments of a sexual character to her on a daily basis, such as, "I won't work with any cunt";
2. continually referred to Carr by such terms as "whore," "cunt," and "split tail;"
3. painted "cunt" on her toolbox;
4. played various sex- or gender-related pranks on Carr, such as painting her toolbox pink and, without Carr's knowledge, cutting out the seat of her overalls;
5. covered her tool box and work area with signs, pictures, and graffiti of an offensive sexual character;
6. hid and stole Carr's tools and equipment;
7. hung nude pin-ups around the shop;
8. stripped to their underwear in front of Carr when changing into and out of their work clothes;
9. placed an obscene Valentine Day's card, addressed to "Cunt," on Carr's toolbox;

7

10. exposed themselves to Carr on two occasions;
11. told Carr that if one of the male co-workers fell from a dangerous height in the shop she would have to give him "mouth to dick" resuscitation;
12. urinated from the roof of the shop in Carr's presence;
13. in Carr's presence, accused a black employee of being "after that white pussy, that is why you want a woman here, you want some of that;"
14. frequently made comments such as "I'll never retire from this tinsmith position because it would make an opening for a nigger or a woman;" and
15. threw a burning cigarette at Carr.

32 F.3d at 1009-1010.

The egregious conduct described in all three of these cases differs dramatically from the conduct cited by Lewis. The concept of a hostile work environment is designed to protect Lewis from the kind of attention that can make the work place "hellish." Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir. 1995). It is not designed to purge the workplace of vulgarity. Id. If the court assumes that all of Lewis' allegations are true, Stroh and Leger certainly acted in a most immature and inappropriate fashion. However, occasional comments with no physical contact, spread over the three months that Lewis worked at Hall Imports, does not lead to the conclusion that Lewis was subjected to an environment that could be described as "hellish."

On the contrary, Lewis' allegations are analogous to those that the Seventh Circuit has deemed not actionable. For example, in McPherson v. City of Waukegan, the court found that a superior's actions did not create a hostile work environment (prior to the time that the plaintiff was assaulted) even though the superior asked the plaintiff and other female employees what color bra they were wearing on several occasions, asked McPherson in a suggestive tone of voice if he could "make a house call" when she was sick, pointed out lingerie in a catalog and told McPherson that she would look good wearing it, and pulled back McPherson's top to look at her bra. 379 F.3d 430, 434-435, 439 (7th Cir. 2004); see also Weiss v. Coca-Cola Bottling Company of Chicago, 990 F.2d 333, 334-35 (7th

8

Cir. 1993)(conduct not actionable where supervisor asked about plaintiff's personal life, complimented her, told her that she was beautiful, asked her on dates, called her a dumb blond, attempted to kiss her outside of work, put an "I love you" sign on her desk, put his hand on her shoulder several times, avoided her for a period of time after his affections were rejected, and twice attempted to kiss her while at work).

In light of the threshold for actionable conduct developed by Seventh Circuit case law, Lewis has not presented evidence adequate to establish a prima facie case. For that reason, in addition to Hall Imports' satisfaction of the Ellerth/Faragher affirmative defense, the court will grant the motion for summary judgment as to the hostile work environment claim.

### IV. RETALIATION AND DISCRIMINATORY TERMINATION CLAIMS

In her complaint, Lewis labels allegations that she was fired because she refused Stroh's sexual advances as a retaliation claim. The purpose of Title VII's retaliation provision, however, is to prevent employers and supervisors from deterring claims of discrimination. Heuer v. Weil-McLain, a Div. of The Marley Co., 203 F.3d 1021, 1023 (7th Cir. 2000). Lewis says that Stroh's comments were a threat—i.e. if Lewis did not comply with Stroh's sexual offers, her employment would be adversely affected. Lewis does not allege that the threat was in any way related to a harassment complaint that Lewis filed. There is also no claim that Hall knew of Lewis' alleged harassment complaint when he decided to terminate her employment. Thus, Lewis' allegations do not amount to a claim of retaliation.

Moreover, Lewis has not presented direct evidence in support of her retaliation and discrimination claims. Direct evidence consists of either an admission by the decision maker—in this case Hall—that his actions were based on discrimination or a "convincing mosaic" that shows the

9

decision maker had discriminatory intent. Rhodes v. Illinois Dept. of Transp., 359 F.3d 498, 504 (7th Cir. 2004). Absent direct evidence, Lewis must rely on the indirect method of proof. Under the indirect approach, the plaintiff employs the "burden shifting method." This is the method discussed in the seminal case of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See also Moser v. Indiana Dept. of Corrections, 406 F.3d 895, 903-04 (7th Cir. 2005)(applying the McDonnell Douglas method to a retaliation claim); Stone v. City of Indianapolis, 281 F.3d 640 (7th Cir.2002)(same). First, the plaintiff must establish a prima facie case of discrimination by proving that: (1) she was a member of a protected class; (2) she was performing his job satisfactorily; (3) she experienced an adverse employment action; and (4) similarly situated individuals were treated more favorably. McDonnell Douglas, 411 U.S. at 802; Haywood v. Incent Technologies, Inc., 323 F.3d 524, 530 (7th Cir. 2003); Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc., 254 F.3d 644, 650 (7th Cir.2001); Moser, 406 F.3d at 903-04. If the plaintiff establishes a prima facie case, the employer must articulate a legitimate, non-discriminatory reason for its employment action. Id. If the employer does so, the plaintiff must prove that the employer's proffered non-discriminatory reason is a pretext and that the true reason was discrimination. Id; Cerutti v. BASF Corp., 349 F.3d 1055, 1061(7th Cir. 2003).

Hall Imports claims that Lewis was fired because she had a poor attendance record, did not meet sale expectations, and was suspected of being involved in suspicious vehicle transactions, that later triggered a criminal investigation. (Hall Imports Summ. J. Br. at 8, 14.). Lewis responds by claiming: (1) that she did not receive the written citation for failing to comply with time-recording policies that Hall Imports submitted in support of its motion; (2) that she was not told that her termination was for poor sales performance and poor attendance; (3) that she was not involved in drug-related activity; and (4) that she was not fired because of her involvement in suspicious vehicle

10

transactions.

This response leaves many of the non-discriminatory reasons proffered by Hall Imports undisputed. For example, Lewis does not dispute that she had poor attendance—she only says she did not receive a citation to that effect. Moreover, Lewis presents no evidence that Hall falsely cited her poor attendance record as a guise for discriminatory motives. Nor does Lewis claim to have made a sufficient number of vehicle sales or submit evidence to show that Hall is lying when he says that her performance did not meet his expectations.

While Lewis does deny that she was fired because of her involvement in suspicious vehicle transactions, the full testimony cited to support that position, from pages thirty-seven to thirty-eight of Hall's deposition, was not provided to the court. (See Pleas Aff. ¶ 12.). Based on the portion of Hall's deposition that was filed by the defendant, it appears that Hall was extremely suspicious of Lewis' involvement in illegal car transactions. In fact, at one point during his deposition, Hall stated that:

> during the period of April and May and forward we were beginning to have real problems with cars missing, transactions that were suspicious, people were given cars to drive that hadn't purchased them, and I became increasingly aware of the issue as we began to take physical inventories and vehicles weren't there along with the suspicious transactions. In the case of Keyia Lewis it was interesting that the majority of these transactions she was somehow involved with, and that in concert with an ongoing investigation created a situation where we had an employee that was under performing, that wasn't coming to work on time, and seemed to be central to these other issues, these suspicious transactions, and it was my humble opinion that we ought to just terminate our relationship with her and proceed with our investigation.

(Meyer Aff. Attach. - Hall Dep. at 35-36.).

Whether or not Lewis committed illegal car transactions is irrelevant. As has been stated by the courts on many occasions, an employer is entitled to take adverse employment action against an

employee, based on an erroneous or poor business judgment, as long as that decision is not based on improper, i.e. discriminatory reasons. Here, Hall sets forth the basis for his suspicions.

Ultimately, none of Lewis' responses establish that the defendant's reasons for her termination are false. Moreover, none of Lewis' responses indicate that the real reason for her termination was discriminatory. As mentioned earlier, it is undisputed that Hall was the person that decided to fire Lewis, and there is no allegation that Hall, himself, discriminated against Lewis. In fact, Lewis agrees that Hall had no knowledge of Stroh's and Leger's alleged harassment. Suffice to say, Lewis has not met her burden under the indirect method of proof.

Furthermore, to even trigger Hall Imports' duty to explain its actions, Lewis must establish a prima facie case of retaliation or discrimination by showing that she was satisfactorily performing her job and that similarly situated employees were treated more favorably. See supra p.10. Lewis has not attempted either showing. This warrants summary judgment on her retaliation and discrimination claims.

## V. NONCOMPLIANCE WITH FEDERAL AND LOCAL RULES

Summary judgment is also warranted on the grounds that Lewis' response to the motion for summary judgment falls far short of the requirements under both the Federal Rules of Civil Procedure and the Civil Local Rules of this district. The response consists of an affidavit by Lewis' counsel that is not based upon personal knowledge. In addition, the affidavit contains statements that are not supported by reference to the evidentiary record. (See Pleas Aff. ¶¶ 13-14.).

These flaws are fatal under Federal Rule of Civil Procedure 56(e) and Civil Local Rule 56.2(b). Under Federal Rule 56(e), Lewis' response "may not rest upon the mere allegations or denials of the adverse party's pleading." Rather, it is incumbent upon Lewis—by affidavits or otherwise—to set

12

forth specific facts showing that there is a genuine issue for trial. Any affidavit filed in opposition to a motion for summary judgment, "**shall** be made on personal knowledge, **shall** set forth such facts as would be admissible in evidence, and **shall** show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e)(emphasis added).

In addition, this court's local rules require Lewis to file a specific response to the movant's proposed findings of fact, clearly delineating only those findings to which it is asserted that a genuine issue of material fact exists. The response must refer to the contested finding by paragraph number and must include specific citations to evidentiary materials in the record which support the claim that a dispute exists. CIV. L. R. 56.2(b)(1). Noncompliance with these rules has resulted in a response that leaves the court uncertain as to the reliability of Lewis' contentions. The response is inadequate. This constitutes an additional reason to grant summary judgment on Lewis' claims.

For all the reasons discussed herein, the court now enters the following order on Hall Imports' motion for summary judgment:

**IT IS THEREFORE ORDERED** that the motion for summary judgment is **granted** and the plaintiff's complaint and this case is hereby **dismissed,** with prejudice**.**

Dated at Milwaukee, Wisconsin this 13th day of March, 2006.

s/AARON E. GOODSTEIN
United States Magistrate Judge

13